IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| KEVIN CLARK ICKE, | ) | Case No. 1:16-cv-01208 |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

**I.    Introduction**

Plaintiff Kevin Clark Icke seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before the court pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g) and Local Rule 72.2(b).

Because substantial evidence supports the Commissioner's decision and because the ALJ applied the correct legal standards, I recommend that the final decision of the Commissioner be **AFFIRMED**.

**II.    Procedural History**

Icke filed an application for DIB on January 30, 2013, alleging a disability onset date of April 13, 2011. (Tr. 162-63, 177) A prior, disallowed application for benefits did not bind the

ALJ in this instance because there was new evidence supporting Icke's new application for benefits. Icke alleged disability based on right shoulder and back issues. (Tr. 181) Icke's application was denied initially (Tr. 83-92, 110) and on reconsideration (Tr. 93-105, 120, 124). Thereafter, Icke requested a hearing before an Administrative Law Judge. (Tr. 127-32)

Administrative Law Judge Paula Goodrich ("ALJ") conducted a hearing on October 9, 2014. (Tr. 40-67) The ALJ denied Icke's claim for benefits on November 13, 2014. (Tr. 10-36) The Appeals Council declined to review of that decision on March 22, 2016, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6)

## III. Evidence Before and Issued Decided by the ALJ

Based on the submitted evidence, the ALJ found plaintiff to have the following severe impairments: "status post ("S/P") rotator cuff repair surgery at the right shoulder, degenerative disc disease ("DDD") of the lumbar spine with right lumbar radiculopathy and foraminal and canal stenosis, and obesity." (Tr. 16) The ALJ also found that Icke had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 17) The ALJ also found

> Through the date last insured, the claimant had the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) – including the exertional abilities to lift and/or carry (including upward pulling) up to 20 pounds occasionally and up to 10 pounds frequently, to push and/or pull (including operation of hand/foot controls) not limited except as within those same weight limitations, and to sit (with normal breaks) for a total of about six hours during the course of an eight-hour workday – except that he was further limited as follows:
>
> - Could only stand and/or walk (with normal breaks) for four total hours of an eye-or workday;
> - Could occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl; new Could never climb ladders, ropes, or scaffolds;
> - Could occasionally reach overhead with the dominant right upper extremity; and

2

- Needed to avoid all exposure to unprotected heights.

(Tr. 19)

The ALJ made the following conclusions concerning the claimant's residual functional capacity based on the evidence before her:

> On review of the objective evidence as a whole, and again considering it being relegated to the year 2013 because of the date last insured, the undersigned finds that it supports a residual exertional capacity for standing and walking up to four hours of an eight-hour workday (with normal breaks), for sitting up to six hours, and for lifting and carrying (and pushing and pulling) objects within the regulatory definition of "light" work – *i.e.* up to 10 pounds frequently and up to 20 pounds occasionally. The record also supports occasional ability (*i.e.*, up to one-third of the workday) to climb ramps and stairs and to perform tasks that would involve balancing, stooping, kneeling, crouching or crawling.

(Tr. 23) Plaintiff has raised no concerns respecting the foregoing medical-legal findings of the ALJ.

The sole issue before this court is whether the ALJ appropriately relied on vocational expert testimony that Icke could perform "light work" despite her finding that the medical evidence required a 4-hour walking/standing limitation. Icke argues that a 4-hour walking/standing limitation is incompatible as a matter of law with the performance of light work as defined in the SSA regulations. Because of the narrow, legal issue presented, it is not necessary to provide a detailed review of the medical evidence or the testimony of the plaintiff; I will only summarize the relevant portion of the VE's testimony.

Vocational Expert Mark Anderson ("VE") testified at Icke's October 9, 2014, hearing. (Tr. 58-63) The ALJ asked the VE if a hypothetical individual could perform Icke's past work in cleaning or building maintenance repair with the following limitations: light work; occasional lifting, carrying, or pulling 20 pounds; frequently lifting, carrying, or pulling 10 pounds; standing or walking for 6 hours in an 8-hour workday and sitting 6 hours in an 8-hour work day;

3

occasional climbing ramps and stairs, balancing, stooping, crouching, and crawling; never climbing ladders, ropes, and scaffolds; occasional overhead reaching with the right upper extremity; avoidance of all exposure to unprotected heights. (Tr. 60) The VE testified that the hypothetical individual could not perform Icke's past work. (Id.)

The ALJ then asked if there were light jobs that an individual could do standing and walking for four hours a day. (Tr. 61) The VE replied:

> There are light jobs that you could stand or sit really at the individual's discretion. The *DOT* doesn't notify that or identify, but I often have clients that need the opportunity to sit or stand. The reason the jobs are classified as light is that the materials that they're work (sic) with exceed the ten-pound threshold for sedentary. That's how they're designated as light.

(Id.) The VE then proceeded to give examples of three such light exertional jobs that could be performed sitting or standing: (1) small products assembler, (2) mail clerk, and (3) electronics worker; and he testified that there were many such positions existing nationally, in the State of Ohio and in Northeast Ohio. (Id.)

The ALJ then modified the first hypothetical by adding a standing and walking limitation of 4 hours in an 8-hour workday. (Tr. 62) The ALJ asked if the same jobs were still available with that modification. (Id.) The VE stated, "Yes." (Id.) The VE testified that his answer was based on his experience in job placement, education, and training and was not addressed by the *Dictionary of Occupational Titles*. (Id.)

**IV.    Standard for Disability**

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

4

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[1]….

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

---

[1] "[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## V. The ALJ's Decision

The ALJ issued a decision on November 13, 2014, finding:

1. Icke last met the insured status requirements of the Social Security Act on December 31, 2013. (Tr. 16)

2. Icke did not engage in substantial gainful activity during the period from his alleged onset date of April 13, 2011 through his date last insured of December 31, 2013. (Tr. 16)

3. Through the date last insured, Icke had the following severe impairments: status post ("s/p") rotator cuff repair surgery at the right shoulder, degenerative disc disease ("DDD") of the lumbar spine with right lumber radiculopathy and foraminal and canal stenosis, and obesity. (Tr. 16)

4. Though the date last insured, Icke did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 18)

5. Through the date last insured, Icke had the residual functional capacity to perform light work including the exertional abilities to life and/or carry (including upward pulling) up to 20 pounds occasionally and up to 10 pounds frequently, to push and/or pull (including operation of hand/foot controls) not limited except as within those same weight limitations, and to sit (with normal breaks) for a total of about 6 hours during the course of an 8-hour workday—except that he was further limited as follows:
   - Could only stand and/or walk (with normal breaks) for 4 total hours of an 8 hour workday;
   - Could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl;
   - Could never climb ladders, ropes, or scaffolds;
   - Could occasionally reach overhead with the dominant right upper extremity; and
   - Needed to avoid all exposure to unprotected heights. (Tr. 19)

6. Through the date last insured, Icke was unable to perform any past relevant work. (Tr. 29)

7. Icke was born on January 19, 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured. (Tr. 30)

8. Icke has at least a high school education and is able to communicate in English. (Tr. 30)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (Tr. 30)

10. Through the date last insured, considering Icke's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. (Tr. 30)

Based on these findings, the ALJ determined that Icke had not been under a disability at any time from April 13, 2011, the alleged onset date, through December 31, 2013, the date he was last insured. (Tr. 31)

## VI. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether substantial evidence in the record supported the ALJ's findings of fact and whether the ALJ correctly applied the appropriate legal standards. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The court must also determine whether the Commissioner applied proper legal standards. If not, the court must reverse the Commissioner's decision. . *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

**B.    Analysis**

Icke asserts that the ALJ's determination that he could perform light work with a 4-hour standing/walking limitation was erroneous. ECF Doc. No. 12, Page ID# 616. Icke contends that a 4-hour standing/walking limitation is more compatible with sedentary work. Icke further

8

contends that if he was capable of sedentary work, *and* if the ALJ moved him to the next age category (based on his borderline age), *then* Icke would qualify as disabled pursuant to the Medical-Vocational Grids ("the grids"). Id. at Page ID# 617. Icke's arguments fall short because light work, by definition, can consist of less than 6 hours of standing/walking. And, even assuming 4-hours of standing/walking is less than definition of light work requires, the grids are not binding when a claimant's RFC falls between two exertional levels. Finally, the ALJ's determination that there were substantial jobs available for work at the modified light exertional level is supported by substantial evidence – the VE's testimony.

### a. Light Work By Definition Could Include Less Than 6 Hours Of Standing/Walking

Social Security Regulations provide that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time…" *Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 at *5-6, 1983 WL 31251 (S.S.A. 1983) (emphasis added). For sedentary jobs "walking and standing are required occasionally…mean[ing] occurring from very little up to one-third of the time." Id. Icke asserts that a 4-hour walking/standing limitation requires him to be classified at the sedentary exertional level. As an initial matter, light work is defined as standing/walking *approximately* 6-hours. Thus, a plain reading of the definition of light work provides for a possibility that standing/walking could occur for less than 6-hours in an 8-hour workday. Icke does not provide any authority to the contrary.

Nevertheless, assuming for the sake of analysis that a 4-hour standing/walking limitation does not meet the definition of light work, remand is still not appropriate.

9

### b. The Grids Do Not Apply Because Icke's RFC is Between Two Exertional Levels

The Grids provide guidance to the ALJ at Step Five. They take into account a claimant's exertional capability (e.g. sedentary, light, medium), age, education, and skill level to provide a simplified determination for granting benefits. See 20 C.F.R. pt. 404, subpt. P, App. 2. "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Id. at § 200.00(a). For example, if Icke could perform light work, had a high school education, and no transferable job skills – the grids would suggest a finding of "not disabled" whether his age category was "younger person" (under age 50) or "a person closely approaching advanced age" (50-54).[2] Id. at §202.13 & §202.20.

Icke argues that at 49 he was "borderline age"[3] and, therefore, should have been moved to the next category (i.e., person closely approaching advanced age). He also argues that, contrary to the ALJ's finding, he could only perform sedentary work. If the court agrees that he

---

[2] This illustrative example does not constitute a finding as to whether Icke meets these categories. The ALJ made no finding as to the transferability of Icke's job skills because the ALJ found that transferability of job skills was not material to the determination of disability. (Tr. 30) Notably, however, the VE testified that Icke's job skills would transfer to medium or heavy exertional levels, but not to the light or sedentary exertional levels. (Tr. 60) See also 20 C.F.R. § 404.1563(c) & (d) for the definitions of younger person and person closely approaching advanced age.

[3] The regulations provide for the possibility of extending the age category guidelines in "borderline age situations" – i.e., when the claimant's age is within a few days up to a few months of reaching a higher age category on a critical date, such as the date last insured. 20 C.F.R. §404.1563(b). However, it must be shown that use of the higher age category would result in a decision of "disabled" instead of "not disabled." Id. Here, the ALJ acknowledged that Icke's 50th birthday occurred 18 days after his date last insured. (Tr. 30) However, the ALJ determined that Icke could perform light work. (Id.) Thus, Icke's age was irrelevant to a determination of whether he was "disabled." (Id.) Assuming that the ALJ accurately found Icke capable of light work, the ALJ's borderline age determination is correct.

should have been limited to sedentary work *and* that he should have been moved to the next age category due to his borderline age *and* the court assumes that he had no transferable job skills, the Grids would support a finding of disabled. Id. at §201.13.

However, "[w]here a claimant's RFC is in between two exertional levels…the grid guidelines, which reflect only common-and not all-patterns of vocational factors, are not binding and are instead used only as an analytical framework." *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) *citing* 20 C.F.R. pt. 404, Subpt. P, App. 2. As the Sixth Circuit explained in *Anderson*:

> In such a situation, a VE is brought in to testify as to whether a significant number of jobs exist in the national economy that a hypothetical individual with the claimant's limitations can perform. See SSR 83–12. As long as the VE's testimony is in response to an accurate hypothetical, the ALJ may rely on the VE's testimony to find that the claimant is able to perform a significant number of jobs. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994).

*Anderson*, 406 F. App'x at 35. *Anderson* cited SSR 83-12, which provides:

> In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational expert] assistance is advisable for these types of cases.

Assuming Icke's RFC was in between two exertional levels, sedentary and light, the grids were not binding.

The regulations define sedentary work as lifting no more than 10 pounds at a time and walking/standing "up to one third of the time" (or slightly more than 2.5 hours in an 8-hour workday). SSR 83-10, 1983 WL 31251 at *5-6; 20 C.F.R. §404.1567. On the other hand, light work is defined as lifting up to 20 pounds occasionally and 10 pounds frequently and requires standing/walking for "approximately 6 hours of an 8-hour workday." Id. (emphasis added)

11

Icke's RFC included a 4-hour standing/walking limitation and provided that he could occasionally lift 20 pounds and frequently lift 10 pounds. (Tr. 19) Significantly, as noted above, Icke does not contest the accuracy of his RFC.

The VE testified that there were some "light" jobs a hypothetical person with Icke's abilities could perform despite a 4-hour standing/walking limitation, because the lifting capability exceeded the 10-pound sedentary work threshold. (Tr. 61) Therefore, even if Icke's standing/walking ability was less than the approximate 6-hour requirement for light work, he was not required to be placed at the sedentary work level. Sixth Circuit case law and Social Security Regulations dictate that the Grids are not binding and the ALJ may rely on VE testimony that the claimant is able to perform a significant number of jobs when a claimant falls between two exertional levels. Thus, the ALJ did not err in doing so.

In addition, unmodified application of the Grid is inappropriate because Icke suffers from several non-exertional impairments. *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). The regulations provide that when an individual has both strength and non-exertional limitations the grid is only a "*framework* for consideration." 20 C.F.R. 404, Appendix 2 of Subpart P, Rule 200.00(e)(emphasis added); *See also Tobeay v. Halter*, 21 F. App'x 309, 310–11 (6th Cir. 2001) (Finding that "Because [claimant] suffered from non-exertional limitations, the medical-vocational guidelines cannot be applied to his case."); *Damron v. Sec'y of Health & Human Servs.,* 778 F.2d 279, 282 (6th Cir. 1985) ("The grid is not fully applicable when the claimant suffers from a non-exertional impairment such as an environmental restriction."). Here, Icke had a number of non-exertional impairments, including that he could only occasionally reach overhead with the dominant right upper extremity; only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and had to

12

avoid all exposure to unprotected heights. (Tr. 19) Thus, the unmodified application of the grid was not appropriate because of his non-exertional limitations.

Therefore, given the uncontested conclusion that Icke's abilities fell between two exertional levels – and had additional non-exertional limitations – the grid guidelines were not binding. The ALJ applied correct legal principles when she relied on the VE's testimony to find that Icke was capable of performing a significant number of light exertional level jobs. (Tr. 31)

Icke's argument that he should have been limited to sedentary work is equally unpersuasive because the law also permitted the ALJ to rely on VE testimony in this regard.

### c. The ALJ Appropriately Determined Icke Could Perform Modified Light Work

Icke contends that the ALJ erred in concluding he could perform modified light work. ECF Doc. No. 12, Page ID# 616. Icke argues that the ALJ's finding "lacks substantial evidence" because he can only stand or walk for 4 hours in an 8-hour workday. Id. Icke argues that light work requires standing and/or walking for at least 6 hours in an 8-hour workday. Id.

Notably, Icke has not challenged the ALJ's finding that he could stand or walk for 4 hours in an 8-hour workday. Rather, Icke contends that a 4-hour stand/walk limitation is incompatible with light work as a matter of law and, as a result, he should only have been found capable of sedentary work. Icke's argument assumes that if a person is not capable of performing all of the requirements at a particular level of exertion, that person must be placed at the next lower level of exertion. The Sixth Circuit has rejected this argument. *Wright v. Massanari*, 321 F.3d 611, 615-15 (6th Cir. 2003).

In *Wright*, the plaintiff similarly argued that because she could not perform all of the requirements of "light work" she should have been classified as only able to perform work at the sedentary exertional level. The Sixth Circuit stated:

> In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled. *Hurt v. Sec. of Health & Human Svcs.,* 816 F.2d 1141, 1142–43 (6th Cir.1987) (per curiam). However, in a situation like Wright's, whose impairments do not precisely match any specific rule, her residual functional capacity (light work) is used as the appropriate framework to determine whether she is disabled. *Kirk v. Sec. of Health & Human Svcs.,* 667 F.2d 524, 530 (6th Cir.1981) ("A claimant's capacity to perform work must be evaluated in light of his age, his education, his work experience, and his impairments, including his pain.") (Internal citation omitted).

*Wright*, 321 F.3d at 615. As discussed above, Icke's impairments do not precisely match a grid rule. Therefore, by proceeding to set the RFC, the ALJ correctly applied the requirements of the law and SSA regulations in determining whether plaintiff was disabled.

This case is substantially similar to *Blankenship v. Comm'r of Soc. Sec.,* 624 F. App'x 419, 428 (6th Cir. 2015) and *Evans v. Comm'r of Soc. Sec.,* No. 1:10-CV-999, 2012 WL 892284, at *5-6 (W.D. Mich. Feb. 21, 2012), *report and recommendation adopted*, No. 1:10-CV-999, 2012 WL 887056 (W.D. Mich. Mar. 14, 2012). In both cases, plaintiffs argued that it was error to find that they could perform light work because they could only stand and walk for *2 hours* in an 8-hour workday. Similar to Icke, plaintiffs asserted that they should have been limited to sedentary work. However, both the Sixth Circuit in (*Blankenship*) and the Western District of Michigan (*Evans*) rejected these arguments, finding that the ALJ appropriately relied on the VE's testimony that there existed a significant number of jobs for light work with a 2-hour stand/walk restriction. Although analogous, Icke's situation is even more compelling because he could stand/walk for 4 hours.

Consistent with the above principles, I conclude that the ALJ appropriately relied on the VE testimony that there were a significant number of jobs available for light work with a 4-hour stand/walk limitation. Accordingly, the VE testimony provided substantial evidence to support the ALJ's decision. *Wright v. Massanari*, 321 F.3d at 616; *citing Varley v. Sec. of Health & Human Svcs.,* 820 F.2d 777, 779 (6th Cir.1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert...."); *Braden v. Sec. of Health & Human Svcs.,* No. 90–3028, 1990 WL 177211 (6th Cir. Nov.14, 1990) (affirming the ALJ's decision where grids were used as a framework for decision making and the ALJ relied on vocational expert testimony in finding that two occupations totaling 4,000 jobs in the regional economy provided a significant number of jobs). Because the ALJ's decision is supported by substantial evidence, I conclude there is no basis for reversal.

## VII. Recommendation

Because Plaintiff Icke has not demonstrated any legal or factual error in the Commissioner's decision, the court should find that his claims are not well taken. I recommend that the final decision of the Commissioner be AFFIRMED, pursuant to 42 U.S.C. §405(g).

Dated: May 16, 2017

Thomas M. Parker
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).